**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARIO LEMUS,<br><br>Plaintiff,<br><br>v.<br><br>LOCAL GREEK, LLC, *et al.*,<br><br>Defendants. | No. 23-22163 (RK) (RLS)<br><br>**OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon Plaintiff Mario Lemus's ("Plaintiff" or "Lemus") unopposed Motion for Default Judgment (ECF No. 27, "Mot.") against Defendants Local Greek LLC, d/b/a Small Bites for Local Greek; BabyC21 LLC, d/b/a Greek Bites Hopewell, d/b/a Local BBQ Hopewell; Local Greek Lambertville LLC; Local GT3 LLC, d/b/a Local Greek Seafood; Local Q LLC, d/b/a Local Greek of Princeton; Local GTK LLC, d/b/a Greek Bites, d/b/a Small Bites, (together the "Restaurant Defendants"); Anthony Kanterakis ("Kanterakis"); and Guillermo Ramos ("Ramos")[1] (together with Kanterakis, the "Individual Defendants") (together with the Restaurant Defendants, the "Defendants"). The Court has considered Plaintiff's Motion and accompanying submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's Motion is **GRANTED** as to the Restaurant Defendants and Kanterakis, and **DENIED** as Defendant Ramos only.

---

[1] Ramos's former attorneys previously noted that they were uncertain "whether this defendant's given name is Guillermo Ramon or Guillermo Ramos." (*See* ECF No. 20 at 4 n.1 (citing ECF No. 17 ¶ 22).) As the Hon. Rukhsanah L. Singh, U.S.M.J. did in a prior Order, the Court will refer to the defendant as Ramos because he is identified by such name in the Defendants' Answer. (*Id.* (citing ECF No. 11).)

## I.    BACKGROUND

### A. FACTUAL BACKGROUND

This case involves a restaurant's alleged repeated failure to pay one of its cooks for overtime work, as required by both federal and New Jersey law. Plaintiff alleges that he was employed as a cook at Local Greek of Princeton and Local Greek Lambertville[2] from on or around March 1, 2022 until on or around April 28, 2023, where his job duties included "gathering ingredients and preparing food for customers." (ECF No. 1, "Compl." ¶ 55; ECF No. 27-1, "Lemus Decl." ¶ 5.) Plaintiff worked for Ramos, who was in charge of day-to-day operations at Local Greek Lambertville, set employee schedules, and disciplined Plaintiff and other employees as needed. (Compl. ¶ 18; Lemus Decl. ¶ 16.) Ramos also made recommendations for firing employees to Kanterakis, who is alleged to be the owner and operator of all of the Restaurant Defendants, and who "made the final decision on all personnel matters." (Compl. ¶¶ 19, 21–23.) Kanterakis also "set employees' rates of pay, reviewed the hours the employees worked, and issued [] paychecks." (*Id.* ¶ 20.)

Although Plaintiff primarily worked for Local Greek of Princeton, all of the Restaurant Defendants are alleged to have shared ingredients with one another, shared employees with one another, and "at times required employees to work at two different locations in the same day." (*Id.* ¶¶ 28–29.) While Plaintiff was employed at Local Greek of Princeton, he allegedly received wage payments from Small Bites for Local Greek, Greek Bites Hopewell, Small Bites, Local Greek Seafood, and Local Greek Lambertville. (*Id.* ¶ 30.)

---

[2] Plaintiff's Complaint, filed in November 2023, and Declaration, filed as an attachment to the Motion for Default Judgment in March 2025, are contradictory on this point. The Complaint states that Lemus worked in Princeton (Compl. ¶ 55) and the Declaration states that Plaintiff worked in Lambertville (Lemus Decl. ¶ 5.)

Plaintiff alleges that throughout his employment, he worked six days per week, and approximately 70 hours per week. (*Id.* ¶ 57.) On Mondays, Tuesdays, Thursdays, and Fridays, he worked from approximately 11:00 A.M. to 10:00 P.M., and on weekends he worked from approximately 9:00 A.M. to 10:00 P.M. (*Id.*) If the restaurant was slow, Plaintiff occasionally worked less. (*Id.*) Plaintiff was allegedly rarely allowed to take work meal or rest breaks, as he usually ate on the job. (*Id.* ¶ 58.) In the rare instances when he was allowed to take a rest break, his breaks typically lasted no more than 5–10 minutes. (*Id.*)

Plaintiff's pay was at a fixed hourly rate. (*Id.* ¶ 59.) When he first started, from March 2022 to June 2022, he was paid $19 per hour. (*Id.* ¶ 60.) In June 2022, he received a raise and made $21 per hour until the end of his employment. (*Id.* ¶ 61.) Plaintiff alleges that he was never paid overtime, even when he worked more than forty hours in a week. (*Id.* ¶¶ 59, 62.)

## B. PROCEDURAL BACKGROUND

On November 9, 2023, Plaintiff filed his Complaint against all Defendants on three causes of action: (1) overtime violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1); (2) overtime violations under the New Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. Ann. § 34:11-56a4; and (3) failure to timely pay wages under the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. Ann. §§ 34:11-4.2, 34:11-4.3. (Compl. ¶¶ 65–83.) Plaintiff also sought to bring his case as a collective action under the FLSA, and as a class action as to the two New Jersey statutes. (*See id.* ¶¶ 65, 72, 79.)[3]

---

[3] Plaintiff does not appear to seek default judgment on behalf of any collective or class. His motion and accompanying declarations relate only to Plaintiff's own pay, and he seeks damages only for his own unpaid overtime wages. (*See* Mot. at 7-8.) Accordingly, the Court does not address the collective and class allegations.

Defendants, who were represented by counsel at the time, answered the Complaint on January 16, 2024. (ECF No. 11.) The parties submitted a joint discovery plan (ECF No. 13) and had a scheduling conference with Judge Singh on February 27, 2024 (*see* docket entry dated 2/27/2024). Judge Singh also entered a discovery Order, requiring fact discovery to be completed by June 28, 2024. (*See* ECF No. 16.)

On May 23, 2024, Defendants' attorney, Michael O'Hara of Bisgaier Hoff, LLC, filed a motion to withdraw as counsel. (ECF No. 17.) In the withdrawal motion, Mr. O'Hara certified that Kanterakis, who "formed and controlled" each of the Restaurant Defendants (*id.* ¶ 2), had not paid for any legal services since January and had paid for "only approximately 18% of the time billed by [the] firm since the inception of [the] matter." (*Id.* ¶ 6.) Kanterakis also failed to pay invoices on another case, represented by the same counsel. (*Id.* ¶ 7.) Between the two cases, Kanterakis owed more than $48,000. (*Id.* ¶ 8.) Mr. O'Hara further stated that he emailed Kanterakis on May 9, informing him that he would either need to pay the bill or find new counsel. (*Id.* ¶ 12.) On May 17, Mr. O'Hara emailed Kanterakis asking whether he had found a new attorney to represent Defendants, and Kanterakis responded "not yet." (*Id.* ¶ 13.) Mr. O'Hara also explained that it was difficult to get in touch with Ramos; Ramos did not have a permanent residence or mailing address and stopped responding to any phone calls or text messages after May 20. (*Id.* ¶ 23.) The only way Mr. O'Hara could serve the motion for withdrawal on Ramos was to take a picture of each page of the motion and send the pictures via text message. (*See* ECF No. 19 ¶ 3.) Ramos never responded. (*Id.* ¶ 7.)

On August 1, 2024, Judge Singh granted Mr. O'Hara's motion to withdraw. (ECF No. 20.) In addition, she ordered Bisgaier Hoff, LLC to advise the Restaurant Defendants that they shall "enter the appearance of new counsel by no later than September 9, 2024." (*Id.* at 5–6.) Judge

Singh further ordered Kanterakis and Ramos to "advise the Court as to whether they intend to proceed *pro se* or if they have retained new counsel by no later than September 9, 2024." (*Id.* at 6.) Via letter filed with the Court on August 27, Mr. O'Hara advised that he sent Judge Singh's Order to Kanterakis on August 21, 2024, and texted the Order to Mr. Ramos on August 23. (ECF No. 23.) On October 18, Adam Sackowitz, counsel for Plaintiff, sent a letter to all Defendants, addressed to each restaurant's location, and addressed to Kanterakis and Ramos at the Princeton location. (*See* ECF No. 27-3.) In the letter, Mr. Sackowitz advised that the deadline had passed[4] for any Defendant to secure new counsel or elect to proceed *pro se*. (*Id.* at 2.) Mr. Sackowitz accordingly inquired as to whether Defendants "intend[ed] to defend this action," invited Defendants to contact his office to discuss the matter before October 31, 2024, and informed Defendants that if they did not appear in the case or contact his office by that date, Plaintiff would seek default judgment. (*Id.*) In contravention of Judge Singh's Order, no new counsel ever entered an appearance on behalf of the Restaurant Defendants, and neither Kanterakis nor Ramos ever advised the Court as to their intention to proceed *pro se* or retain new counsel.

On November 7, 2024, consistent with Federal Rule of Civil Procedure ("Rule") 55, Plaintiff requested an entry of default from the Clerk of Court, which was subsequently granted. (ECF No. 24.) Plaintiff filed his Motion for Default on March 31, 2025. (ECF No. 27.) Defendants did not respond to the Motion.

## II.    **LEGAL STANDARD**

Rule 55 permits a party to seek and a court to enter default judgment against a party that fails to plead or otherwise defend claims asserted against it. Fed. R. Civ. P. 55(b)(2). A party can

---

[4] The September 9 deadline was ultimately extended to September 30, 2024. (ECF No. 22.) Defendants did not meet either deadline.

only move for default judgment once the clerk has entered default. Fed. R. Civ. P. 55(a); *see also Allaham v. Naddaf*, 635 F. App'x 32, 36 (3d Cir. 2015). "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits . . . .'" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984)). "Because the entry of a default judgment prevents the resolution of claims on the merits, '[the Third Circuit] does not favor entry of defaults and default judgments.'" *Loc. 365 Pension Fund v. Kaplan Bros. Blue Flame Corp.*, No. 20-10536, 2021 WL 1976700, at *2 (D.N.J. May 18, 2021) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)).

Before entering default judgment, "the Court must address the threshold issue of whether it has personal jurisdiction and subject matter jurisdiction over the parties." *Prudential Ins. Co. of Am. v. Bramlett*, No. 08-119, 2010 WL 2696459, at *1 (D.N.J. July 6, 2010). Then, the Court must determine "(1) whether there is sufficient proof of service, *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985); (2) whether a sufficient cause of action was stated, *Chanel, Inc.*[, 558 F. Supp. 2d at 535]," *Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, No. 11-7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012); and (3) whether default judgment is proper according to the three *Emasco* factors: "[(i)] whether the party subject to default has a meritorious defense, [(ii)] the prejudice suffered by the party seeking default, and [(iii)] the culpability of the party subject to default," *Doug Brady, Inc., v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emacsco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

Finally, the Court determines damages. Rule 55 provides that the court "*may* conduct hearings . . . to determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B) (emphasis added).

However, "the Court need not conduct a hearing so long as it ensures that there is a basis for the damages specified in the default judgment." *Paniagua Grp., Inc. v. Hospitality Specialists, LLC*, 183 F. Supp. 3d 591, 605 (D.N.J. 2016) (cleaned up). Although factual allegations are accepted as true, the Court does not accept as true allegations in the Complaint as they relate to damages. *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005).

## III.    DISCUSSION

### A. JURISDICTION

The Court is satisfied that it has subject matter jurisdiction over all of Plaintiff's claims. Plaintiff's FLSA claim arises out of a federal statute, and jurisdiction is therefore proper under 28 U.S.C. § 1331. The Court also has supplemental jurisdiction over Plaintiff's state law claims under NJWHL and NJWPL because the state law claims "form part of the same case or controversy" as the federal FLSA claims. *See* 28 U.S.C. § 1367(a).

The Court also has personal jurisdiction over all Defendants, because they all reside or are incorporated in New Jersey. (Compl. ¶¶ 7–15); *see Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 684 (D.N.J. 2015) ("[A]n individual's domicile, or home, constitutes the paradigmatic forum for the exercise of general jurisdiction." (quotation omitted)).

### B. PROPER SERVICE

A court may only enter default judgment against defendants who were properly served. *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011) (citing *Gold Kist, Inc.*, 756 F.2d at 19). The moving party "bears the burden of proof on that issue." *Grand Ent. Grp. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993) (citation omitted). The movant can meet this burden "by a preponderance of the

evidence using affidavits, depositions, and oral testimony." *Mills v. Ethicon*, 406 F. Supp. 3d 363, 392 (D.N.J. 2019) (citation omitted).

Although Plaintiff did not file any proof of service on the docket, the Court finds that Plaintiff has nonetheless established that Defendants were properly served in compliance with Rule 4. "Making an appearance in a case is the equivalent of process and service, and waives all objections to process or service, submitting the appearing defendant to such jurisdiction as the court is competent to exercise." *First Guaur. Mortg. Corp. v. Kirkpatrick-Brooks*, No. 18-14567, 2018 WL 6933416, at *2 (D.N.J. Dec. 14, 2018), *report and recommendation adopted*, 2019 WL 113723 (D.N.J. Jan. 3, 2019) (citations omitted). Here, Defendants answered the Complaint on January 16, 2024 (ECF No. 11; *see also* Sackowitz Decl. ¶ 5), participated in the discovery process (*see* ECF No. 13), and attended proceedings before Judge Singh (*see, e.g.*, docket entry dated 2/27/2024). At no point did Defendants object to service of process.

### C. SUFFICIENCY OF COMPLAINT[5]

The Court must next consider "whether the moving party's complaint establishes a legitimate cause of action." *La. Counseling & Fam. Servs., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 365 (D.N.J. 2008); *see also Animal Sci. Prods., Inc. v. China Nat'l Metals & Mins. Imp. & Exp. Corp.*, 596 F. Supp. 2d 842, 848 (D.N.J. 2008) ("A litigant's failure to state a claim upon which relief may be granted . . . prevents the presiding court from entering a default judgment.").

---

[5] Plaintiff's brief in support of default judgment does not reference his claim under NJWPL and does not appear to separately seek default judgment on that count. In his declaration, Mr. Sackowitz notes, "Plaintiff's claims for failure to timely pay wages relate solely to the overtime wages that Defendants failed to pay for Plaintiff, and therefore any damages for failure to timely pay wages are fully subsumed within Plaintiff's damages for unpaid overtime wages, as outlined above." (Sackowitz Decl. ¶ 34 n.2.) Accordingly, the Court does not separately address the NJWPL claim.

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013)). The law prohibits any employer from employing an employee for longer than forty hours in a week "unless such employee receives compensation for his employment in excess of . . . a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). To state a *prima facie* claim under the FLSA, a plaintiff must allege that: "(1) he was an employee of the defendant; (2) the defendant was engaged in commerce; and (3) that the defendant failed to pay overtime compensation for hours worked in excess of 40 in a given week." *Mondrago v. Sushitobox*, No. 22-2102, 2023 WL 5370245, at *2 (D.N.J. Aug. 22, 2023).

Taking the allegations of the Complaint as true, *see DIRECTV, Inc.*, 431 F.3d at 165 n.6, the Court finds that Plaintiff's Complaint establishes a legitimate cause of action for failure to pay overtime wages under both the FLSA and the NJWHL.[6] Plaintiff alleged that he was employed by Defendants (Compl. ¶ 55), and that he worked in commerce, as a cook, "gathering ingredients and preparing food for customers." (*Id.* ¶¶ 55–56.); *see also Qingwei Ma v. Chef Jon's Authentic Chinese Cuisine*, No. 17-7379, 2020 WL 6111037, at *3 (D.N.J. Oct. 16, 2020) (finding that a cook in a restaurant stated an FLSA overtime claim). As to the third factor, Plaintiff has plainly alleged that he worked 70 hours per week (which, of course, is more than 40 hours), and that he was only paid at his base rate of either $19 or $21 per hour for all of those hours worked, rather

---

[6] "[B]ecause the NJWHL overtime compensation and record-keeping requirements are modeled after and nearly identical to their analogous Fair Labor Standards Act regulations, judicial interpretations construing FLSA are applicable [to NJWHL claims]." *Crisostomo v. Exclusive Detailing, Inc.*, No. 08-1771, 2010 WL 3640183, at *5 (D.N.J. June 28, 2010). The Court's analysis under the FLSA accordingly applies equally to the NJWHL claims.

than the one-and-one-half-times pay rate he was owed under the FLSA. (*See* Compl. ¶¶ 57, 59–62.)

Although Plaintiff alleges that he worked at Local Greek's Princeton and Lambertville locations (Compl. ¶ 55; Lemus Decl. ¶ 5), he brings his causes of action against a variety of locations he is not alleged to have worked at, and two individuals. The Court next determines which Defendants are proper in this instance.

Plaintiff has stated claims against all Restaurant Defendants under a "single-employer" theory of liability. Under such a theory, "nominally separate companies may be so interrelated that they constitute a single employer." *Davis v. Abington Mem'l Hosp.*, 817 F. Supp. 2d 556, 565 (E.D. Pa. 2011) (quotation omitted). "If such a relationship exists, the entities are jointly and severally liable for remedying unfair labor practices committed by either of them, meaning that a wronged employee can sue both his nominal employer and its integrated affiliates in the enterprise." *Walsh v. AMA Staffing Servs. LLC*, No. 22-1786, 2023 WL 4677732, at *3 (D.N.J. July 21, 2023) (cleaned up). To determine whether a single-employer theory is viable, courts in this Circuit have used the following factors: "(i) whether the companies share common ownership or financial control; (ii) the interrelatedness of the companies' operations; (iii) whether the companies share common management; and (iv) whether the companies centralized control of labor relations." *Id.* (citing *Huang v. Sakura Mandarin, Inc.*, 2022 WL 2052646, at *4 (E.D. Pa. June 7, 2022)).

All four factors are met here, as alleged in Plaintiff's Complaint. *First*, Kanterakis owns and operates all of the locations. (Compl. ¶¶ 21–27.) *Second*, all of the Restaurant Defendants share operations, including issuing wage payments to employees at different locations. (*Id.* ¶ 30.) *Third*, all of the Restaurant Defendants are managed by Kanterakis. (*Id.* ¶¶ 21–27.) *Fourth*, all of

the Restaurant Defendants centralize their labor relations by sharing employees between the different restaurants, and setting rates of pay, compensation, and day-to-day activities. (*Id.* ¶¶ 30–33.) Accordingly, even though Local Greek of Princeton was Plaintiff's nominal employer (*id.* ¶ 55), all of the Restaurant Defendants can be held liable as a single employer.

The FLSA also provides for individual liability against employers. *See Qu Wang v. Fu Leen Meng Rest. LLC*, No. 16-8772, 2018 WL 1027446, at *2 (D.N.J. Feb. 23, 2018). Under the FLSA, an employer is "any person acting directly or indirectly in the interests of an employer in relation to an employee." 29 U.S.C. § 203(d). "Factors to consider include whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Santiago v. Lucki Lodi Buffet, Inc.*, No. 15-6147, 2016 WL 6138248, at *2 (D.N.J. Oct. 21, 2017). However, an employer need not have "'ultimate control' for an employer–employee relationship to exist; even 'indirect control' may be sufficient. In other words, the alleged employer must exercise significant control." *Solis v. A-1 Mortg. Corp.*, 934 F. Supp. 2d 778, 788 (W.D. Pa. 2013) (quoting *In re Enterprise Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 683 F.3d 462, 468 (3d Cir. 2012)) (cleaned up).

As alleged, only Kanterakis fall under the FLSA's broad definition of "employer." *See In re Enterprise*, 683 F.3d at 467–68 (noting that "[t]he Supreme Court has even gone so far as to acknowledge that the FLSA's definition of an employer is 'the broadest definition that has ever been included in any one act.'" (quoting *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945))). Indeed, Plaintiff alleges that Kanterakis had the final authority to hire and fire employees, made "the final decision on all personnel matters," set rates of pay, and reviewed employment records, including hours worked. (*See* Compl. ¶¶ 19–20.) Ramos, however, is not alleged to have

had such significant control over Plaintiff. Although he was purportedly "in charge of the day-to-day-operations at Princeton," he did not have the power to hire or fire anyone (indeed, he could only make recommendations to Kanterakis), he did not determine the rate or method of any employee's pay, and is not alleged to have maintained or even had access to any employment records. (*See id.* ¶¶ 18–19.) Clearly, only Kanterakis exercised "significant control" over Plaintiff's employment. *See Solis*, 934 F. Supp. 2d at 288.

Accordingly, the Court finds that the Complaint establishes legitimate causes of action against all Defendants except for Ramos, because Ramos was not Plaintiff's employer.

### D. DEFAULT JUDGMENT FACTORS

Next, the Court considers the three default judgment factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc*, 250 F.R.D. at 177. The Court finds that each of the three factors weighs in favor of entering default judgment in this case. Because Plaintiff has not established a legitimate cause of action against Ramos, his actions (or inactions) are not included in this analysis.

*First,* Defendants have not put forward any meritorious defenses which would caution against default judgment. Although Defendants answered the Complaint, and the Answer included nineteen affirmative defenses (*see* ECF No. 11 at 9–11), these defenses are conclusory and "not sufficient to avoid default judgment." *See Trustees of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund v. Danco Painting LLC*, No. 17-5739, 2021 WL 3674353, at *4 (D.N.J. Aug. 19, 2021) (finding no meritorious defense despite defendant's answer with affirmative defenses). Indeed, to avoid default judgment, a defendant "must demonstrate that he has a facially meritorious defense, not one based on mere denials and conclusory language." *Phase*

*3 Media, LLC v. Drake*, No. 18-3387, 2018 WL 2723879, at *2 (D.N.J. June 6, 2018). Defendants have not done so.

*Second*, Plaintiff is prejudiced absent default because there are no other means of seeking relief for his lack of overtime payments. *See Qingwei Ma*, 2020 WL 6111037, at *4; *Gowan v. Cont'l Airlines, Inc.*, No. 10-1858, 2012 WL 2838924, at *2 (D.N.J. July 9, 2012) (finding plaintiff "has no other means of seeking damages for the harm allegedly caused by [d]efendant").

*Third*, Defendants are culpable for their conduct. As explained above, Defendants failed to pay their attorney, who was forced to withdraw from representation in order to avoid incurring additional losses. (*See* ECF No. 17 ¶¶ 6–8.) Counsel timely notified Defendants of his intent to withdraw, instructed Defendants to find new counsel, and Kanterakis replied that he had not done so. (*Id.* ¶¶ 12–13.) Judge Singh ordered Kanterakis to either advise that he was proceeding *pro se* or obtain new counsel, and he did not do so, in contravention of the Court's Order. (*See* ECF No. 20); *Bibbs v. Sec. Atl. Mortg. Co.*, No. 10-346, 2012 WL 3113975, at *3 (E.D. Pa. Aug. 1, 20212) ("A default judgment may be imposed because a party has failed to comply with a court's orders."). Even after Mr. Sackowitz reached out to open lines of communication with Defendants after Mr. O'Hara withdrew (*see* ECF No. 27-3), there was no response from any Defendant. Defendants have been given ample opportunity to appear in this case, and Kanterakis was made aware that his counsel was withdrawing. Indeed, nearly a year has elapsed since Judge Singh granted Mr. O'Hara's withdrawal motion. (*See* ECF No. 20.) Defendants are responsible for their own conduct, and default is therefore warranted. *See, e.g.*, *Price Home Grp., LLC v. Ritz-Craft Corp. of Pa.*, No. 16-668, 2017 WL 5191807, at *4 (D.N.J. Nov. 8, 2017) (granting default judgment against defendant who failed to retain counsel); *Falato v. Fotografixusa, LLC*, No. 09-5232, 2013 WL 3873260, at *2 (D.N.J. July 25, 2013) (same).

Accordingly, Plaintiff is entitled to default judgment against the Restaurant Defendants and Kanterakis.

### E. DAMAGES

Plaintiff seeks to recover $18,510 in unpaid overtime wages, $37,020 in liquidated damages, $1,773 in costs, $31,717 in attorney's fees, and pre- and post-judgment interest. (*See* Sackowitz Decl. ¶¶ 30, 34, 45, 46, 49.) "When defendants default in FLSA cases, courts have held that the plaintiff's recollection and estimates of hours worked are presumed to be correct for purposes of establishing damages." *Alvarez v. Millenium Tree Servs. & Landscaping Design, Inc.*, No. 12-7182, 2013 WL 5536193, at *3 (D.N.J. Oct. 7, 2013). However, the Court must be satisfied that there is a "basis for the damages specified in the default judgment." *Nieves v. Top Notch Granite & Marble LLC*, No. 10-1589, 2011 WL 2937352, at *2 (D.N.J. July 19, 2011) (quotation omitted).

Here, the Court finds that Plaintiff is entitled to $15,733.50 in unpaid overtime wages, which is less than the $18,510 that he seeks. Plaintiff and his counsel each submitted sworn declarations attesting to the unpaid wages. (*See* Sackowitz Decl.; Lemus Decl.) Plaintiff also filed a spreadsheet calculating his damages. (*See* ECF No. 27-4.) The spreadsheet calculates the damages as follows: For the period between March 1, 2022 and May 31, 2022, Plaintiff worked 13 weeks, at 70 hours per week. (*Id.*) He was paid $19 per hour for each hour worked, even though he should have been making $28.50 for overtime hours worked. (*Id.*) Calculated out, Plaintiff asserts that he is owed $3,705 in overtime for those weeks. (*Id.*) For June 1, 2022 through April 28, 2023, Plaintiff worked 47 weeks, at 70 hours per week. (*Id.*) He was paid $21 per hour for each hour worked, even though he should have been making $31.50 for overtime hours worked. (*Id.*)

Calculated out, Plaintiff asserts that he is owed $14,805 in overtime for those weeks. (*Id.*) All told, Plaintiff asserts that he is owed $18,510 in backpay.

The above calculations, however, do not tell the full story. Although Plaintiff cannot be expected to remember with precision the number of hours he worked on any given day in 2022 and 2023, he nonetheless states in both his Complaint and Declaration that he "occasionally worked fewer hours if the restaurant was slow." (Compl. ¶ 57; Lemus Decl. ¶ 8.) Because Plaintiff did not work the number full of hours that he used in his calculations, the Court will award 85% of his requested backpay—$15,733.50

Both the FLSA and the NJWHL allow for liquidated damages, but at different amounts. The FLSA provides for liquidated damages in the amount of 100% of backpay, 29 U.S.C. § 216(b), unless the employer can show that its actions were "in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation" of the FLSA. *Brock v. Claridge Hotel & Casino*, 846 F.2d 180, 187 (3d Cir. 1988) (alterations in original). As of 2019, the NJWHL provides for liquidated damages in the amount of 200% of wages due, except for a "first violation by an employer if the employer shows to the satisfaction of the court that the act or omission constituting the violation was an inadvertent error made in good faith." N.J. Stat. Ann. § 34:11-4.10(c). A plaintiff, however, cannot recover under both statutes. *See Nieves*, 2011 WL 2937352, at *3. Where, as here, Defendants have failed to establish that they acted in good faith or that failure to pay was an inadvertent error, Plaintiff is entitled to the 200% liquidated damages set forth in the NJWHL. *See Alvarez*, 2013 WL 5536193, at *3. Plaintiff is awarded $31,467 in liquidated damages.

Plaintiff next seeks prejudgment interest for all unpaid wages at a rate according to New Jersey Court Rule 4:42-11. (Mot. at 9.) However, "prejudgment interest is not available to parties

that are awarded liquidated damages for unpaid wages under the FLSA because 'both serve the same purpose, namely to compensate employees for losses caused by delayed receipt of wages they are due.'" *Punter v. Jasmin Int'l Corp.*, No 12-7828, 2014 WL 4854446, at *6 (D.N.J. Sept. 30, 2014) (quoting *Gonzelz v. Bustelton Servs., Inc.*, No. 08-4703, 2010 WL 1813481, at *2 (E.D. Pa. May 5, 2010)); *see also Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 715 (1945) ("To allow an employee to recover the basic statutory wage and liquidated damages, with interest, would have the effect of giving an employee double compensation for damages arising from delay in the payment of basic minimum wages.") Here, Plaintiff would be owed liquidated damages under the FLSA, but is instead receiving even *more* liquidated damages under the NJWHL. Therefore, the Court "cannot award prejudgment interest on wages for which liquidated damages have been awarded." *Punter*, 2014 WL 4854446, at *6.[7]

Both the FLSA and the NJWHL provide for awards of reasonable attorney's fees and costs. 29 U.S.C. § 216(b); N.J. Stat. Ann. § 34:11-56a25. "The Third Circuit uses, and the Supreme Court has endorsed, a 'lodestar' approach for calculating fees in FLSA cases." *Qu Wang*, 2018 WL 1027446, at *5 (citing *Souryavong v. Lackawanna Cnty.*, 872 F.3d 122, 128 (3d Cir. 2017)).

Here, Plaintiff's counsel submitted a declaration attesting to the work of counsel on this case (*see* Sackowitz Decl.) and attached a record of all time billed to this matter since its inception. (ECF No. 27-5.) Five attorneys, one law clerk, and one legal assistant billed time to this case, though the law clerk and legal assistant each billed less than one hour. (*Id.* at 6.) The attorneys assigned to the cases charged between $325 and $575 per hour, with the highest rate being charged

---

[7] Plaintiff also seeks post-judgment interest pursuant to 28 U.S.C. § 1961. (*See* ECF No. 27-7 at 3.) This interest is mandatory, regardless of whether the Court orders it. *See Dunn v. HOVIC*, 13 F.3d 58, 60 (3d Cir. 1993) ("[P]ost-judgment interest is awarded by statute as a matter of law so it is automatically added, whether or not the district court orders it.").

by attorney Kenneth Katz, founding member and managing partner of Katz Melinger PLLC. (Sackowitz Decl. ¶¶ 37–41.) The record reflects that the attorneys spent considerable time drafting and editing the complaint, conferring with their client, conferring with opposing counsel regarding deadlines and possible settlement, drafting discovery requests and notices of deposition, drafting status letters, and, ultimately, drafting and filing the present motion. (*See generally* ECF No. 27-5.) All told, Plaintiff's counsel spent a purported 83.80 hours on the case, billing $31,717, at an average rate of $378.48 per hour. This is a reasonable rate. *See, e.g.*, *Santiago*, 2016 WL 6138248, at *4 (finding rates between $375 and $450 per hour reasonable); *Lurty v. 2001 Towing & Recovery, Inc.*, No. 18-6302, 2019 WL 3297473, at *5 (D.N.J. July 23, 2019) (finding rates between $400 and $450 per hour reasonable). The Court also finds reasonable that Plaintiff's counsel spent a significant amount of time on this case because Defendants were represented by counsel for nearly six months, filed an Answer, began the discovery process, and engaged in settlement conversations. Accordingly, Plaintiff is awarded $31,717 in attorney's fees.

Finally, Mr. Sackowitz declares that Plaintiff's counsel spent $405 in filing fees and $1,368 in process server costs, totaling $1,773. (Sackowitz Decl. ¶ 46.) Invoices attached to the declaration confirm the same. (*See* ECF No. 27-6.) The Court finds these costs to be reasonable and awards them to Plaintiff.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Default Judgment (ECF No. 27) is **GRANTED** as to Defendants Local Greek LLC, d/b/a Small Bites for Local Greek; BabyC21 LLC, d/b/a Greek Bites Hopewell, d/b/a Local BBQ Hopewell; Local Greek Lambertville LLC; Local GT3 LLC, d/b/a Local Greek Seafood; Local Q LLC, d/b/a Local Greek of Princeton; Local GTK LLC, d/b/a Greek Bites, d/b/a Small Bites; and Anthony Kanterakis. Plaintiff's Motion is **DENIED** as to Defendant Guillermo Ramos**.** An appropriate Order follows.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: June 12, 2025